UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES EMSLIE and LISA ANN EMSLIE,

                          Plaintiffs,

            -vs-                             08-CV-423-JTC

RECREATIVE INDUSTRIES, INC, and
BORG-WARNER AUTOMOTOVE, INC.,

                          Defendants.

---

APPEARANCES:    THOMAS E. STILES, ESQ., Brooklyn, New York, for Plaintiffs.

                        UNDERBERG & KESSLER LLP (COLIN D. RAMSEY, Esq., of Counsel), Buffalo, New York for Defendant Recreative Industries, Inc.

                        BOND, SCHOENECK & KING, PLLC (THOMAS D. KELLEHER, ESQ., of Counsel), Syracuse, New York, for Defendant Borg-Warner Automotive, Inc.

## INTRODUCTION

In this action, plaintiffs seek damages for personal injuries suffered by plaintiff James Emslie while he was a passenger in an all-terrain vehicle manufactured by defendant Recreative Industries, Inc. ("RII"). The complaint sets forth six causes of action against RII and defendant Borg-Warner Automotive, Inc. ("Borg Warner"), for negligence, breach of warranty, strict liability, and a derivative cause of action for loss of consortium on behalf of plaintiff Lisa Ann Emslie. There are presently three motions before the court: RII's motion to dismiss on the grounds of *forum non conveniens* (Item 14), plaintiff's motion to amend the complaint (Item 37), and Borg Warner's motion for summary judgment (Item 41).

## BACKGROUND and FACTS

According to the complaint, defendant RII is a New York corporation with a place of business in Buffalo, New York. Item 1, ¶ 3. RII is the manufacturer of an all-terrain vehicle known as the "Max II." *Id.,* ¶ 6. Defendant Borg Warner, a Delaware corporation doing business in the Western District of New York, is alleged to be the manufacturer of the vehicle's transmission. *Id.,* ¶¶ 4, 8. On June 9, 2005, in Bristol, England, plaintiff James Emslie was injured while riding as a passenger on the vehicle, which was being driven by Adam Reeves. Plaintiffs allege that the vehicle "suddenly and without warning overturned and rolled repeatedly end over end." Item 1, ¶ 10.

Plaintiffs brought this action in the Western District of New York on the basis of diversity jurisdiction. 28 U.S.C. § 1332. RII filed an answer to the complaint on June 30, 2008. Item 4. Borg Warner filed its answer on July 2, 2008, (Item 5), and interposed a cross-claim against RII. On September 19, 2008, RII filed a motion to dismiss for *forum non conveniens*. Item 14. In support of the motion, RII submitted an affidavit from Adrian Bever, a British solicitor. Mr. Bever examined the complaint and stated that the law in England and Wales recognizes claims for negligence, breach of warranty, and strict products liability. He also stated that in England and Wales, "the injured party's spouse would not usually bring a separate claim for damages in his or her own right unless he/she had personally sustained physical injury or psychological harm as a consequence" of the accident. Item 14, Att. 2, ¶ 7. RII also submitted an affidavit from Jari Wallach, President of RII. Mr. Wallach stated that RII sold two Max II-500T all-terrain vehicles to Westland Special Vehicles, an English entity, on March 20, 2001. Item 14, Att. 3, ¶ 4. It was Mr.

2

Wallach's understanding that the vehicles were used on a game show and underwent modifications prior to being shipped to England. *Id.,* ¶ 5. Mr. Wallach stated that to properly defend the action, it should be litigated in England and that RII would waive any jurisdictional or statute of limitations defenses and concede that it is amenable to service of process in England. RII would also provide any relevant documents and make a representative available to testify in England. *Id.,* ¶¶ 15-18.

Plaintiffs filed a response in opposition to the motion on October 24, 2008, including a memorandum of law (Item 17) and attorneys' affidavits. Items 19-21. Frank Lefevre, a Scottish solicitor, stated that if the case were to proceed in Scotland, neither defendant is registered to do business in Scotland and would not be amenable to suit in Scotland. Item 19, ¶ 3. He also stated that plaintiffs' claims would be subject to a statute of limitations defense. *Id.,* ¶ 4. Additionally, the right to a jury trial in Scotland is subject to the discretion of the court and, despite any agreement of the parties, the case would be heard by a judge if the judge determines that the case is too complex for a jury. *Id.,* ¶ 5. Mr. Lefevre also stated that witnesses and documentary evidence from persons outside the jurisdiction of the Scottish court can only be compelled by way of Letters of Request under the Hague Convention. Thus, Mr. Lefevre stated, there is no guarantee that such witness testimony or documentary evidence would be available in a trial of this action in Scotland. *Id.,* ¶¶ 6-7. Mr. Lefevre also stated that a spouse or partner has no right of claim in Scotland against a defendant. *Id.,* ¶ 8. Finally, Mr. Lefevre stated that the costs of pursuing the action in Scotland may be prohibitive, as the Scottish rule provides that expenses are normally awarded against the unsuccessful party. *Id.,* ¶ 10.

Additionally, plaintiffs submitted an affidavit from Charles D. Cole, an attorney licensed to practice in New York and a solicitor in England and Wales. Item 20. Mr. Cole stated that neither RII nor Borg Warner has a place of business or other presence in the United Kingdom, and thus neither defendant would be amenable to suit in England. *Id.,* ¶¶ 4-5. English law does not recognize a claim for loss of consortium on behalf of the spouse of an injured party, although the injured spouse may recover the reasonable costs of services provided by his or her spouse. *Id.,* ¶ 7. Mr. Cole stated that the sources of proof are located in the United States, where the vehicle was manufactured; in Scotland, where plaintiffs reside; and in England, where the accident occurred. English procedural rules will economically hamper the parties' access to their adversaries' documents and witnesses. *Id.,* ¶ 10. Mr. Cole also stated that a solicitor may not bring a claim in an English court and be paid a percentage of the recovery, and the "English Rule" exposes the unsuccessful party to liability for the fees and expenses of the litigation. *Id.,* ¶ 12.

Mr. Cole further stated that English procedural law does not provide for broad document discovery as is allowed under the Federal Rules of Civil Procedure. Item 20, ¶ 14. Likewise, depositions of an investigative character, as are allowed under the Federal Rules, would likely not be allowed under English law. As such, Mr. Cole opined that the burden of obtaining evidence from England to use in a trial in the United States or in England would be the same for both parties. *Id.,* ¶ 22. Mr. Cole stated that it would be difficult and expensive for a litigant in an English court to obtain testimony from an unwilling witness under the Hague Convention procedures. *Id.,* ¶ 26.

Counsel for Borg Warner filed a declaration in opposition to the motion to dismiss (Item 23). In it, he stated that Borg Warner would not consent to jurisdiction in England or Scotland and would not agree to waive any statute of limitations defenses. *Id.,* ¶ 2. Additionally, Borg Warner seeks to have its cross-claim against RII litigated in the United States. *Id.,* ¶ 5.

RII filed a reply on October 31, 2008. Item 24. It submitted a transcript of the deposition of plaintiff James Emslie in further support of the motion to dismiss. In his deposition, Mr. Emslie stated that at the time of the accident, the ATV was being driven by Adam Reeves. Mr. Emslie could not see Mr. Reeves engage the gear controls, could not observe his behavior, and did not hear him say anything. Thus, RII argues, the testimony of Mr. Reeves, a non-party witness, is critical to the defense of the action.

Oral argument on the motion to dismiss for *forum non conveniens* was heard on September 14, 2009. The court reserved decision. Thereafter, following the exchange of discovery, plaintiff filed a motion for permission to file and serve an amended complaint (Item 37). Additionally, Borg Warner filed a motion for summary judgment dismissing the complaint (Item 41).

In support of the motion for summary judgment, Borg Warner submitted the testimony of Jari Wallach, President of RII. Mr. Wallach testified at an examination before trial that RII manufactures the Max II all-terrain vehicle (Item 41, Exh. A, p. 6, "Wallach Dep."). An affiliated corporation, Skid Steer, manufactures transmissions at the RII location using RII employees. *Id.,* pp. 6-7. Mr. Wallach stated that Skid Steer manufactured the transmission that was in the vehicle in which plaintiff was injured. *Id.,* p. 67. He further testified that Borg Warner originally manufactured the transmission, but

in 1974 or 1975, RII and Hustler Corporation bought the design, manufacturing tools, and inventory in order to build the transmissions. *Id.,* 68. They formed the Skid Steer Corporation, which is still co-owned by RII and Hustler, and manufactures the transmissions used in the Max II. *Id.,* p. 69.

Prior to 1975, RII bought its transmissions from Borg Warner. Wallach Dep., p. 105. In June of 1975, Borg Warner and RII executed a letter of intent to the effect that RII would purchase all rights, title, and interest to the T20 transmission, including tools, dies, jigs, patents, gauges, test equipment, patterns, design, fixtures, and inventory used in the manufacture of the transmissions. *Id.,* pp. 106-07; Item 41, Exh. B. RII and Hustler stated they would form a new company, Skid Steer, to purchase the transmission business from Borg Warner. Wallach Dep., p. 107. In December 1975, Skid Steer Corporation entered into a formal agreement with Borg Warner to purchase the T20 transmission operation. *Id.,* pp. 107-08; Item 41, Exh. C. Mr. Wallach testified that over the years, there have been changes in the bearings, washers, gears, seals, and many other "minor changes." Wallach Dep., p. 110. After 1975, it was Skid Steer's determination whether to keep the original design or make changes to the transmission. *Id.,* p. 112.

## DISCUSSION

### 1. Borg Warner's Motion for Summary Judgment

Plaintiffs seek to hold Borg Warner liable on a theory of predecessor liability for the allegedly defective design of the transmission that was manufactured by Skid Steer Corporation for use in the all-terrain vehicle manufactured and sold by RII. The law of New York imposes strict liability for defective products only upon manufacturers and those

6

involved in placing a product in the stream of commerce. See *Bickram v. Case I.H.*, 712 F. Supp. 18, 22 (E.D.N.Y. 1989) (citing *Blackburn v. Johnson Chemical Co.*, 490 N.Y.S.2d 452, 454 (Sup.Ct.1985), and *Nickel v. Hyster Co.*, 412 N.Y.S.2d 273, 274 (Sup.Ct.1978)). The latter category would include parties in the direct distribution chain such as distributors, retailers, processors, and makers of component parts. *See Gobhai v. KLM Royal Dutch Airlines*, 445 N.Y.S.2d 445, 446 (App. Div 1981); *Blackburn*, supra, 490 N.Y.S.2d at 454. The well-established rationale for imposing liability on these parties is that the burden of recompensing the injured should be spread to those parties responsible for the defect and in the best position to eliminate dangers in the future. *See Caprara v. Chrysler Corp.,* 417 N.E.2d 545, 549 (N.Y. 1981).

Here, Borg Warner sold all of its rights, title, and interest in the T20 transmission product line in 1975. Since December 1975, Borg Warner has not designed, manufactured, sold, assembled, tested, or supplied the T20 transmission. It is undisputed that Borg Warner had no control over or involvement with the transmission on the vehicle at issue. It has not been in a position to modify or improve upon the design of the T20 transmission or to correct any defects in the design. Borg Warner played no role in placing the transmission at issue into the stream of commerce. Under these circumstances, Borg Warner is not liable for the design of the transmission.

Plaintiffs rely on *Sage v. Fairchild-Swearingen Corp.*, 517 N.E.2d 1304 (N.Y. 1987). In *Sage,* the plaintiff was injured when she caught her hand on a hook attached to the doorway of the cargo compartment of an aircraft manufactured by the defendant. The hook itself was a replacement part that had been made and installed by plaintiff's co-

7

workers, but had essentially the same design and characteristics of the original. While the Appellate Division reversed a jury verdict in plaintiff's favor on the ground that the hook had not been manufactured by defendant, the Court of Appeals found no substantial modifications to the hook and determined that the manufacturer could be liable.

This case is distinguishable from the present case in that plaintiffs here wish to hold Borg Warner liable not as a manufacturer but as the designer of a product that has been manufactured by another company for 30 years. As the Court of Appeals stated in *Sage,*

> Inasmuch as the defect was in the design, the manufacturer was the logical party in a position to discover the defect and correct it to avoid injury to the public. Placing the economic burden on the manufacturer under these circumstances does no more than induce it to design quality equipment at the outset and "discourage[s] misdesign rather than encourage[s] it."

*Sage v. Fairchild-Swearingen Corp.,* 517 N.E.2d at 1308 (citations omitted).

Borg Warner is not in a position to discover and correct defects in the design of the T20 transmission, as it has been out of the transmission business for over 30 years. It is not liable as the original designer of the T20 transmission, and its motion for summary judgment is granted.

**2. Motion to Dismiss for *Forum Non Conveniens***

In response to the motion to dismiss for *forum non conveniens*, counsel for Borg Warner stated that Borg Warner would not consent to jurisdiction in England or Scotland and would not agree to waive any statute of limitations defenses (Item 23, ¶ 2). With Borg Warner not subject to suit in Great Britain and unwilling to consent to jurisdiction in an alternate forum, plaintiffs could not establish jurisdiction over Borg Warner and RII's motion could not be granted. *See Jota v. Texaco, Inc.,* 157 F.3d 153, 159 (2d Cir. 1998) (in order

8

to grant motion to dismiss for *forum non conveniens*, court must satisfy itself that subject litigation may be conducted elsewhere against all defendants); *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 63-64 (S.D.N.Y. 1999) (all defendants remaining in action must be subject to jurisdiction in the proposed alternative forum). However, with Borg Warner dismissed from the action, the court may undertake a full analysis of RII's motion to dismiss for *forum non conveniens.*

The doctrine of *forum non conveniens* is based on the principle that "'a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.'" *Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005), *cert. denied,* 547 U.S. 1175 (2006) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). Notwithstanding the propriety of the action in a particular district under the general federal venue statute, 28 U.S.C. § 1391, under the doctrine of *forum non conveniens,* "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The Supreme Court has declined to delineate the exclusive factors that would "'justify or require either grant or denial of remedy.'" *Id*. (quoting *Gilbert,* 330 U.S. at 508). Consequently, a district court's inquiry is highly fact-specific. *Id.; see also Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 712 F. Supp. 383, 392-93 (S.D.N.Y. 1989) ("The Supreme Court has emphasized the flexibility with which the District Court must approach a *forum non*

*conveniens* determination, and consequently there are no specific circumstances which would require either a grant or denial of the remedy.").

In exercising its discretion in ruling on motions to dismiss based on *forum non conveniens*, the court applies the three-step analysis outlined in *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (*en banc*):

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex,* 416 F.3d at 153 (internal citations omitted). As explained in *Iragorri*, when reviewing a motion to dismiss for *forum non conveniens*, there is an assumption that plaintiff's choice of forum will be sustained unless defendant can demonstrate that reasons exist to afford plaintiff's choice less deference. *Iragorri,* 274 F.3d at 70-71. In fact, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508. Nonetheless, circumstances may alter the degree of deference given a plaintiff's forum choice. For example, when a plaintiff sues in his home forum, that choice is generally entitled to great deference, *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947), because it is presumed to be convenient to the plaintiff. *See Piper Aircraft v. Reyno*, 454 U.S. at 255-56. In contrast, when a foreign plaintiff sues in a United States forum, such choice is entitled to less deference because one may not easily presume that such choice is convenient to the plaintiff. *Id.* at 256. In these circumstances, "it is more likely that forum-shopping for a higher damage award or for some other litigation advantage was the motivation for

plaintiff's selection." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003), *cert. denied,* 540 U.S. 1149 (2004).

In *Iragorri*, the Second Circuit stated that the level of deference to any plaintiff's choice of forum moves on a "sliding scale" depending on several considerations. *Iragorri,* 274 F.3d at 71. Specifically, the Second Circuit explained that a plaintiff's choice of forum should receive greater deference where it appears that there is a genuine connection between the plaintiff, or the lawsuit, and the forum, or that the plaintiff was sincerely concerned with convenience issues in choosing that forum, and less deference is warranted when it appears that the choice of forum was motivated by forum-shopping. *Id.* at 72. To assist the district courts in making this determination, the Second Circuit highlighted some factors to be considered. For example, factors that support a plaintiff's choice of forum include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence in the chosen forum, defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense. *Id.* Alternatively, factors that would decrease the level of such deference include attempts to win a tactical advantage resulting from local laws, generosity of juries in the United States or in the forum district, the litigant's popularity–or their adversaries' unpopularity–in the district, or the inconvenience and expense of defending the suit in that jurisdiction. *Id.*

> Bearing in mind that litigants rarely are concerned with promoting their adversary's convenience at their own expense, a plaintiff's choice of the defendant's home forum over other fora where defendant is amenable to suit and to which the plaintiff and the circumstances of the case are much more closely connected suggests the possibility that plaintiff's choice was made for reasons of trial strategy. Accordingly, a plaintiff's choice to initiate suit in the

11

> defendant's home forum–as opposed to any other where the defendant is also amenable to suit–only merits heightened deference to the extent that the plaintiff and the case possess bona fide connections to, and convenience factors favor, that forum.

*Pollux,* 329 F.3d at 74.

Considering the above factors, the court notes that the plaintiffs are British citizens living in Scotland with no apparent connection to the Western District of New York, while defendant RII is domiciled in this district. Witnesses and documents on the issue of the design of the vehicle are present and available in the Western District of New York, but defendant has agreed to provide such evidence in a British court as well. Other witnesses and evidence, including the driver of the vehicle, the accident investigators, the accident reports, medical experts and records, and the vehicle itself, are located in England. Finally, defendant RII has stipulated that it is amenable to suit in the United Kingdom and would consent to the jurisdiction of a British court. Considering the *Iragorri* factors, the court finds that plaintiffs' choice of forum in this district should only be accorded limited deference.

Turning to the issue of the availability of an alternative forum, RII contends that the case can be litigated in the United Kingdom. To demonstrate the existence of an adequate alternative forum, a defendant must show: (1) the defendant is amenable to process in the foreign forum, *Reyno*, 454 U.S. at 254 n. 22; (2) the foreign forum permits litigation of the subject matter in dispute, *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan,* 273 F.3d 241, 246 (2d Cir. 2001); and (3) there are no other considerations making the foreign forum unsatisfactory, *see DiRienzo v. Philip Servs. Corp.,* 232 F.3d 49, 57 (2d Cir. 2000), *vacated on other grounds,* 294 F.3d 21 (2002) (adequacy of procedural safeguards and available remedies are other considerations in determining availability of

alternative forum). Here, defendant has unequivocally agreed to litigate this action in the British courts. "An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement," and only on rare occasions will the "alternative forum . . . be so unsatisfactory that the forum is inadequate." *DiRienzo*, 232 F.3d at 57 (citing *P.T. United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 74-75 (2d Cir. 1998) and *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir.1991)).

Plaintiffs note that Mrs. Emslie's derivative action for loss of consortium does not exist under British or Scottish law and that a jury trial is not guaranteed in such a case. However, the mere showing that the applicable substantive law in the alternative forum is less favorable to the plaintiff is not enough to defeat a motion to dismiss. *Piper Aircraft v. Reyno,* 454 U.S. at 247. The lack of either a guaranteed jury trial or the recognition of a loss of consortium claim does not render England or Scotland a clearly unsatisfactory alternative. *See In re Union Carbide Corp. Gas Plant Disaster at Bhopal*, 809 F.2d 195, 199, 202 (2d Cir. 1987) (affirming district court's *forum non conveniens* dismissal based on finding that Indian courts were adequate forum despite, *inter alia*, absence of juries)*; Bell v. British Telecom*, 1995 WL 476684, at *2 (S.D.N.Y. August 9, 1995) (dismissal on grounds of *forum non conveniens* despite lack of claim for loss of consortium in foreign forum). Likewise, the absence of any contingency fee arrangement in England or Scotland does not render the foreign forum inadequate. *See Murray v. British Broadcasting Corp.,* 81 F.3d 287, 292-93 (2d Cir. 1996) (absence of contingency fee arrangements "may not be considered in determining the availability of an alternative forum"); *VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F. Supp. 2d 377, 383 (S.D.N.Y. 2003) (same).

Accordingly, the court finds that either England or Scotland provides an adequate alternative forum for the dispute between plaintiffs and RII.

Having determined the existence of an adequate alternative forum, the court must consider a number of public and private factors relevant to the *forum non conveniens* calculus. *See Gilbert*, 330 U.S. at 508-09. Relevant private interests to the litigants include: (1) "the relative ease of access to sources of proof;" (2) the "availability of compulsory process [to compel] attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;" (3) the "possibility of view of premises, if view would be appropriate to the action;" (4) "the enforcibility of a judgment if one is obtained;" and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508. The public interests the court considers include: (1) "[a]dministrative difficulties" inherent in bringing a case in a congested docket; (2) imposing jury duty on citizens who have "no relation to the litigation;" (3) "holding the trial in [the] view and reach" of the citizens whom the trial might affect; (4) "local interest in having localized controversies decided at home;" and (5) avoiding requiring that "a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 508-09.

It appears that the law of Great Britain will apply to this action regardless of whether it is tried in this court. "A federal court sitting in diversity applies the choice of law rules of the forum state." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). "In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." *Padula v. Lilarn Properties Corp.*,

644 N.E.2d 1001, 1002 (N.Y. 1994). In determining the greater interest as to applicable law in tort cases, courts must consider (1) the significant contacts and in which jurisdiction they are located, and (2) "whether the purpose of the law is to regulate conduct or allocate loss." *Padula*, 644 N.E.2d at 1002.

On the issue of significant contacts, plaintiffs are domiciliaries of Scotland, and the accident occurred in England. Defendant is a domiciliary of New York, and the vehicle was designed and manufactured in New York. With respect to the second inquiry, New York distinguishes between "conduct regulation" and "loss allocation" rules. *Lee*, 166 F.3d at 545. When the conflict involves rules that regulate conduct, New York law usually applies the law of the place of the tort ("*lex loci delicti*"). *Padula,* 644 N.E.2d at 1002; *see also Lee*, 166 F.3d at 545. On the other hand, when the conflict involves rules that allocate loss, *i.e.* they prohibit, assign, or limit liability after the tort occurs, the choice of law analysis is governed by the principles articulated in *Neumeier v. Kuehner*, 286 N.E.2d 454 (N.Y. 1972), which take into account the domicile of the parties, the conduct at issue, and the purposes of the substantive law at issue. *Padula,* 644 N.E.2d at 1003; *Lee*, 166 F.3d at 545. Plaintiffs' claims for negligence, breach of warranty, and strict products liability involve conduct regulation rules. *See, e.g. Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001) (causes of action involving the duty and standard of care applicable to manufacturers, *i.e.,* negligence and strict products liability claims are, for choice-of-law purposes, conduct-regulating); *Richardson v. Michelin North America. Inc.,* 1997 WL 461994, at * 3 (W.D.N.Y. Aug. 8, 1997) (strict liability laws are conduct-regulating); *Wheeler v. Standard Tool & Mfg. Co.*, 359 F. Supp. 298, 301 (S.D.N.Y. 1973), *aff'd,* 497

F.2d 897 (2d Cir.1974) (strict liability claims are governed by the law of the place of injury). Thus, the law of the jurisdiction where the tort occurred, Great Britain, applies to plaintiffs' claims alleging negligence, breach of warranty, and strict liability. *See, e.g., Burke v. Stone & Webster, Inc.*, 2006 WL 522604, at * 4 (S.D.N.Y. Mar. 2, 2006) (applying New Jersey law to the plaintiff's products liability and negligence claims because New Jersey was the place where the accident occurred and, accordingly, it is the state with the greatest interest in regulating behavior within its borders). In light of the inevitable risks of misinterpretation of a foreign body of law to the substantive issues in this case, it would be more efficient that the matter be tried by a British court given its inherently greater ability to understand and apply the applicable British law.

Other public and private factors also favor dismissal in favor of a British court. Defendant has consented to provide manufacturing and design evidence and witnesses relevant to this issue in a British forum, while highly material evidence, such as the eyewitness testimony, accident investigation documents and witnesses, the scene of the accident, and the vehicle itself, which will not be readily within plaintiffs' control in this court, would be more accessible to both sides in a British forum. *See Bell v. British Telecom,* 1995 WL 476684, *3 (S.D.N.Y. August 9, 1995) (superior access to documentary, physical, and testimonial evidence renders trial in Scotland likely to be more efficient and less expensive than a comparable proceeding in New York). Additionally, the cost of travel for any British witness as well as the plaintiffs would be burdensome. Similarly, any differences in the substantive law and the discovery process does not render the British forum less convenient. "[T]he unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum

inadequate." *Borden, Inc. v. Meiji Milk Prods. Co.,* 919 F.2d 822, 829 (2d Cir. 1990), *cert. denied,* 500 U.S. 953 (1991) (quoting *Shields v. Mi Ryung Constr. Co.*, 508 F. Supp. 891, 895 (S.D.N.Y. 1981).  Finally, the court recognizes that British jurors have an interest in determining the dispute on behalf of plaintiffs who reside in their own community, while New York jurors have an interest in determining the safety of a product manufactured in their state by defendant.  Accordingly, this factor does not favor either party.  In sum, both the private and public factors favor dismissal of the case on the basis of *forum non conveniens.*

### 3. Motion for Leave to File an Amended Complaint

Plaintiffs seek to amend the complaint to add additional parties who are affiliates of defendant RII, state their claims with more specificity, and add claims for the violation of New York General Business Law § 349 and gross negligence.  While leave to amend is "freely" given when justice so requires, Fed. R. Civ. P. 15(a), leave may be denied if such an amendment would be futile.  *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 69 (2d Cir. 2002).  Given the court's determination that Borg-Warner is not liable for the design of the transmission, the proposed additional claims against Borg-Warner would not survive a motion to dismiss and thus would be futile.  *See Lucente v. IBM Corp.,* 310 F3d 243, 258 (2d Cir. 2002).  With Borg-Warner's dismissal from the case and the grant of RII's motion to dismiss on the grounds of *forum non conveniens,* the motion to amend the complaint is denied.

## CONCLUSION

Borg-Warner's motion for summary judgment (Item 41) is granted. RII's motion to dismiss on the grounds of *forum non conveniens* (Item 14) is granted. Plaintiffs' motion for leave to amend (Item 37) is denied. The Clerk is directed to enter judgment dismissing the complaint.

So ordered.

_____\s\ John T. Curtin\_\_
JOHN T. CURTIN
United States District Judge

Dated: May 5, 2010
p:\opinions\08-423.april52010

18